____ FILED      ___ ENTERED
____ LOGGED _____ RECEIVED

**12:49 pm, Oct 13 2022**

AT  BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **IN THE MATTER OF THE APPLICATION FOR WARRANTS AUTHORIZING THE SEARCH OF CERTAIN ELECTRONIC ACCOUNT INFORMATION AND THREE CELLULAR PHONES IN THE POSSESSION OF DIPLOMATIC SECURITY SERVICE CRIMINAL FRAUD INVESTIGATONS (IDENTIFIED IN ATTACHMENTS A1 – A2)** | 1:22-mj-02839-JMC<br><br>1:22-mj-02840-JMC<br><br>**Case No. _____** |

### Affidavit in Support of a Seizure Warrant

I, Nicholas Dornsife, being duly sworn state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent (SA) with the U.S. Department of State, Diplomatic Security Service (DSS) and am assigned to the Criminal Fraud Investigations Division in Arlington, Virginia.  I have been employed with DSS as a Special Agent since September 13, 2009.  My duties include conducting criminal investigations into crimes involving illegal passport or visa issuance or use; identity theft or document fraud affecting or relating to the programs, functions, or authorities of the Department of State; and federal offenses committed within the special maritime and territorial jurisdiction of the United States.  I have received training in conducting criminal investigations from the Federal Law Enforcement Training Center.  Through my training, education and experience, I have become familiar with the manner in which individuals impersonate and assume other identities and/or personas; forge, alter, and misrepresent documents to falsely present themselves; and conceal fruits of their crimes.   I received training in conducting law enforcement investigations from and previously served as a police officer with

Baltimore City Police and Montgomery County Maryland Police Departments. I have a Bachelor of Arts Degree in Biology from Northwestern University.

2.    During my employment with the Department of State, I have conducted and participated in investigations concerning violations of federal law involving fraud, identity theft, passport fraud, visa fraud and related violations of the United States Code. I am trained and authorized to investigate the offenses alleged herein. During the course of these investigations, I have conducted or participated in surveillance, the execution of search warrants, debriefings of victims, and have participated in investigations that include the interception of electronic communications, including electronic surveillance of email, social media, and networking sites, and the execution of search warrants related to email, social media, and networking sites.

## PURPOSE OF THE WARRANT

3.    I make this affidavit in support of an application for a search warrant to search and examine electronic account information and electronic media already in the possession of the Diplomatic Security Service pursuant to a previously executed federal search warrant:

   a.    **Facebook Account Data:** Records and information associated with the following Facebook account, further described in Attachment A1, obtained pursuant to a previous federal search warrant and currently in the possession of DSS, for the information listed in Attachment B1:

      i.    tommy.comer.144

   b.    **Three Cellular phones:** Three cellular telephones (hereinafter the Target Cellular Phones), further described in Attachment A2, recovered from the Target Residence located at 14517 Rock Creek Road, Brandywine, Maryland on or about June 1, 2021 during the execution of a previous federal search warrant, and

2

currently in the possession of DSS.  Your Affiant seeks the authority to search the Target Cellular Phones for the evidence described in Attachment B2, pertaining to the Subject Offenses of this search warrant.

4.     Your Affiant seeks this information in order to locate and seize evidence of violations of 18 U.S.C. § 922(g)(1) (possession of firearm by a convicted felon), 18 U.S.C. § 922(j) (possession of a stolen firearm), and 18 U.S.C. § 922(a)(6) (false statement in connection with the acquisition of a firearm) (collectively, the "Subject Offenses").

5.     The information and items listed in attachments A1 and A2 were seized pursuant to federal search warrants issued by the Honorable Thomas M. DiGirolamo, United States Magistrate Judge, on May 24, 2021.  *See* Misc. No. 21-mj-1532-TMD – 1539-TMD.  (the "Original Warrants").  The Original Warrants involved a fraud investigation.  During the course of examination of the Facebook information and cellular phones in question, evidence of additional criminal activity (criminal activity in addition to the fraud-related subject offenses of the Original Warrants) was observed in plain view.  Your Affiant seeks the authority to search the same records and information and target cellular phones already obtained pursuant to the Original Warrants, for the evidence described in Attachments B1 and B2 with respect to the firearms-related Subject Offenses of this affidavit.

## JURISDICTION

6.     Because the information, records, and devices are already in the possession of the government and are located in the District of Maryland, this Court has jurisdiction pursuant to Fed. R. Crim. P. 41(b).[1]

_____

[1]     With respect to the Facebook accounts sought in the Original Warrant, the Court had jurisdiction to issue the Original Warrants because it was "a court of competent jurisdiction" as

## **FACEBOOK**

7.      The information and records discussed in Attachment A1 were previously obtained from Facebook.  Facebook is a free social networking website that provides a host of services to its users.  Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  Facebook users can post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  A particular user's profile page includes a "Timeline," which is a space where the user and his or her "Friends" can post messages, attachments, and links.

8.      Facebook has a Photos application, where users can upload images and videos.  Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video.  For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

9.      Facebook users can exchange private messages with one another.  These messages, which are similar to email messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

---

defined by 18 U.S.C. § 2711.  *See* 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court was "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

4

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS –
## INCLUDING OF CELLULAR PHONES

10.     The items listed in attachment A2 are cellular phones.  The Original Warrant authorized the seizure of electronic storage media found at a residence at issue in the fraud investigation (as discussed below) or, potentially, the copying of electronically stored information, all under Fed. R. Crim. P. 41(e)(2)(B).

11.     Based on my training, I know that electronic devices such as cellular phones (smartphones) can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools. There is probable cause to believe that things that were once stored on the Target Cellular Phones may still be stored on those devices, for various reasons, as discussed in the following paragraphs.

12.     As further described in Attachment B2, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how a Target Cellular Phone was used, the purpose of its use, who used it, and when.

13.     There is probable cause to believe that this forensic electronic evidence might be stored within the Target Cellular Phones because data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such

as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

14.     Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

15.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

16.     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

17.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

18.     I was a Baltimore City police officer and dealt with firearms offenses in that capacity.  During the course of this case, I have consulted with persons who have training and experience in investigations concerning firearms.  Based on that experience and consultation, I know that individuals involved in illegal firearm possession frequently use cellular telephones

("cell phones"), social media accounts, and other electronic media storage to further their illegal

activities.[2] Specifically, I know that:

a. Persons who possess firearms illegally tend to use their cell phones to take photographs or videos depicting the firearm and ammunition, which are stored in their cell phones and social media accounts.

b. Not only do suspects frequently use those cell phones and social media accounts to post photographs or videos of the firearms or ammunition alone, but they also post images of themselves with firearms, comment on images of themselves with firearms, or are tagged in such photographs or videos posted by others. These cell phones and accounts also include other valuable evidence linking the suspects to criminal activity, like images showing suspects in the area of a crime (including an arrest for possession, a discharging, or a shooting or homicide) at the time it occurred, wearing clothes matching those of a known suspect, having possession of other tools or instrumentalities at another time, or other identifying or relevant information.

c. Persons who possess firearms illegally, including stolen firearms, use their cell phones and social media accounts to communicate with others in reference to the possession, purchase, selling, transfer, or intended use of firearms. Social media platforms allow users to communicate with one another via private messages or post comments to photographs and videos that are accessible to a wider audience consisting of the user's "friends" or "followers" or the public. This can include by "tagging" people in their posts or adding "hashtags" or other text, which tags and hashtags can refer explicitly to criminal organizations.

d. Records of these communications, including the communications themselves (if not deleted by the phone or social media user), are often stored by the relevant social media platform for extended periods of time.

e. I also know that it is common for suspects to keep their social media accounts active for periods of years.

**PROBABLE CAUSE**

19.    The following statement of fact will demonstrate there is probable cause to support

that Doreen GILMORE ("GILMORE") and Lloyd COMER ("COMER") did commit the

---

[2]    Because this investigation involves a situation in which the Facebook account information and cell phones in question were already examined pursuant to an earlier search warrant, examples of the types of firearms-related evidence that can be obtained from social media and cellular phones are already discussed in this affidavit.

firearms-related Subject Offenses discussed herein and that evidence of those violations will be found on the target account information and cellular devices described herein.

20.     I have not included every fact I know about COMER and GILMORE and their illegal activities in this affidavit; rather, I have included those facts I believe are needed to demonstrate probable cause for the warrant I seek.  The information in this affidavit is based on my personal knowledge and observations, on information conveyed to me by other law enforcement officials, and on my review of records, documents, and other physical evidence relevant to COMER's and GILMORE's activities.

21.     The investigation that led to the Original Warrant began with DSS learning that COMER had obtained a U.S. passport using the identity of GILMORE's deceased brother and used the passport to travel internationally.  Diplomatic Security, Criminal Fraud Investigations Branch (DS/CFI) received a tip from private citizen (identified herein as "Witness 1") of possible passport fraud committed by COMER.  Through the course of the investigation, agents further learned that COMER and GILMORE have been operating a scheme in which they used stolen identities to fraudulently obtain and keep vehicles from car dealerships on which they make little or no payments.  In addition, GILMORE and COMER were currently living in Maryland at 14517 Rock Creek Rd, Brandywine, Maryland (the "Target Residence"), a home that was purchased using the identity of GILMORE's mother, which I believe was in fact purchased by GILMORE using fraudulent identification, proof of employment, and financial documents in her mother's name. The mortgage loan was currently in default as well at the time of the Original Warrant. Information indicating that COMER and GILMORE were living at the Target Residence includes, among other things, the following:

a.      I believe that that GILMORE and COMER applied for and obtained a mortgage on their home in the name of GILMORE's mother, Dianna Graham, possibly with Graham's unwitting assistance. The lender, LoanDepot.com, provided documents in response to a grand jury subpoena showing that on May 22, 2020 a loan application was submitted using the name, SSN, and date of birth of Dianna Graham, but providing GILMORE's contact information of the phone number (571) 839-2073 and email address doe7267@gmail.com.  The loan was in the amount of $433,200.00 for the Target Residence.  Records indicate the loan was partially funded by a check from GILMORE. Graham, or GILMORE as Graham, provided employment references of two companies registered to GILMORE and which GILMORE had referenced in previous fraudulent loan applications. COMER was listed as the Human Resources point of contact that verified Graham's employment at one of the companies.  Graham additionally provided a bank statement and W-2 and 1040 tax documents as proof of income.  These documents all contained indicators of fraud, to include an incorrect SSN listed for Graham on the 2018 W-2 forms; in addition to being the incorrect SSN for Graham, there was an additional digit in the SSN.  The Bank of America bank statement for Graham's account also has indicators that the employment income information was altered, to include inconsistent font type and size within the document and incorrect formatting of the account number and deposit amounts on the statement in comparison to other Bank of America statements provided in response to a grand jury subpoena.  The closing date for the purchase of the Target Residence was on or about May 26, 2020.

b.  During the execution of the Original Warrant on June 1, 2021, COMER and GILMORE were each located at the Target Residence when entry was made at approximately 7:00am.  Investigators found identity documents and financial documents bearing their names (although not necessarily addressed to the target residence), as well as documents pertaining to aliases of identity theft victims.  As seen below, inmate identification cards for COMER were found.  Finally, investigators spoke with a witness with personal knowledge who identified both COMER and GILMORE as living at the Target Residence.

22.  Judge DiGirolamo issued the Original Warrants (dated May 24, 2021) for the Facebook Accounts and the Target Residence to search for evidence related to violations of 18 U.S.C. § 1028A (aggravated identify theft), 18 U.S.C. § 1542 (false statement in application and use of passport), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), and 18 U.S.C. § 371 (conspiracy to commit offense or to defraud United States).

**Execution of the Original Warrant at Target Residence and**
**Obtaining of Target Cellular Phones**

23.  On or about June 1, 2021, agents from DSS and the Social Security Administration (SSA) executed the search warrant on the Target Residence located at 14517 Rock Creek Rd, Brandywine, Maryland.  During the search of the Target Residence, agents observed and photographed Inmate identification cards for COMER issued by the District of Columbia Department of Corrections (photos below):

 

*Photographs of COMER's inmate ID cards located at the Target Residence on June 1, 2021.*

24.     During the search of the Target Residence, agents also observed numerous firearms inside the residence in addition to a shooting range built on the property at the rear of the Target Residence.  Photos from the day of the search are shown below:

 

*Photographs of one of the firearms and the shooting range located at the Target Residence on June 1, 2021.*

25.     During the search of the Target Residence, agents recovered numerous electronic media devices, including the Target Cellular Phones of this application:

- One Samsung Galaxy S20 Ultra 5G (IMEI: 351845119564956, "Phone 1");

- One Samsung Galaxy S20 Ultra 5G Smartphone (IMEI: 354084114560069, "Phone 2"); and

11

- One Samsung Galaxy Note 9 (IMEI: 356567090952803, "Phone 3").

26.     The electronically stored information on those devices was copied under Fed. R. Crim. P. 41(e)(2)(B).  Pursuant to the Original Warrants, computer forensic analysts from DSS conducted a review of the electronically stored information, specifically searching for all records relating to violations of the target offenses in the Original Warrant (including 18 U.S.C. § 371, 18 U.S.C. § 1028A, 18 U.S.C. § 1343, 18 U.S.C. § 1344, and 18 U.S.C. § 1542).

- For Phone 1: DSS analysts determined that the user account name and email associated with Phone 1 were "Donald Gilmore" and donaldgilmore30@gmail.com;

- For Phone 2: While a specific username was not listed for Phone 2, analysts found several SMS messages that refer to the cellphone's user as "Tommy" and an outgoing message stating, "Hi it's Lloyd Comer Email. Tommyzx1021@gmail.com".  Various witnesses advised agents that COMER was known as "Tommy."

- For Phone 3: no username was listed for Phone 3.

27.     While reviewing the electronically stored information of these devices for violations related to fraud and identity theft, analysts observed images and messages related to COMER's possession of firearms and evidencing violations of the Subject Offenses of this requested warrant.   Analysts examining the Target Cellular Phones (and the Facebook information discussed below) were not specifically looking for firearms-related information.[3]

---

[3]     Your affiant's understanding of the process undertaken during the analysis of the digital media per the Original Warrants was as follows: analysts reviewed the devices' logical file systems including both user-created data and system-generated files. Examples of user-created data include communications (chat messages and email), documents, pictures, and internet

However, during the course of steps taken to obtain information relevant to the fraud investigation, the analysts did come across information pertaining to firearms in plain view and did take note of such evidence when it was observed. For example, evidence pertaining to COMER and GILMORE's control over the Target Residence was relevant to the crimes discussed in the Original Warrants because the residence was believed to have been purchased via the unlawful use of the name and identity of GILMORE's mother (and hence was part of the ongoing fraud conspiracy between COMER and GILMORE). As seen in the photographs discussed below, evidence of COMER and/or GILMORE's use of the residence was often intermingled with the use and storage of firearms on the property. Because investigators have not conducted a complete search of the Target Cellular Phones or Facebook account for firearms-related evidence, out of an abundance of caution the decision was made to obtain a follow-up search warrant focused on firearms evidence.

28.     On Phone 1, analysts observed - during their initial search for evidence related to violations of fraud and identity theft - the following messages sent on or about April 28, 2020:

| | |
|---|---|
| Incoming: | Diggin the M-1 carbine and the Enfield |
| Outgoing: | Have to find a clip for the black one |
| Outgoing: | The one you gave me didn't fit |
| Incoming: | If you were talking about the SKS they don't have removable magazines. It is standard with a 10 round fixed magazine but you |

_____

history. Analysts conducted automated keyword searches across the files, folders, and (if available) unallocated space (meaning space on the drive or device not currently in use by the file system where deleted data may reside) of the devices. Analysts also conducted manual searches of files and folders on the media. Analysts used the following keywords for use in automated searches of the submitted evidence items (those terms being relevant to the fraud investigation): 1C4HJXFG3LW142390, house, motorcycle, ATV, Jamaica, yacht, boat, and jeep. Analysts additionally used variations of the names, Social Security numbers, and email addresses of victims and aliases as keywords for use in automated searches of the submitted evidence items.

can also replace it with 20 or 30 round magazines but they're not removable like the AK

29.     The text exchange above appears to relate to particular firearms recovered from the Target Residence (specifically, the reference to the "M-1" and the "Enfield," and the reference to the "SKS"). On Phone 1, analysts also observed numerous photographs of firearms, to include firearms that appear to be the same as those seized from the Target Residence during the execution of the Original Warrants as well as photographs of COMER in possession of firearms on the shooting range at the rear of the Target Residence. Copies of some of those photos are below:



*Photographs from Phone 1 of a Glock 23 Handgun, Walther P38 Handgun, and CMMG Inc. Rifle*



*Photographs from Phone 1 of various Rifles, a German Sports Guns GSG16 Carbine, and a Black Aces Tactical FD12 Shotgun*

14



*Photographs from Phone 1 of COMER with a Rifle on the shooting range at the rear of the Target Residence*

30.    On Phone 2, analysts observed - during their initial search for evidence related to violations of fraud and identity theft – text messages referencing firearms, including:

- an incoming message on or about April 9, 2020 stating, "I found that piece for the Glock to make it full auto. Interested in a trade? The Glock piece and my AK for that AR,"

- an outgoing message on or about April 10, 2020 stating, "Will get you some loads tomorrow 12 or 16 gauge," and

- an incoming message on or about May 23, 2020 stating "Tommy you gonna make it tomorrow to do some shooting?"

31.    On Phone 2, analysts also observed numerous photographs of firearms, to include firearms that appear to be the same as those seized from the Target Residence during the execution of the search and seizure warrant (seen in the below photos):



*Photographs from Phone 2 of various Rifles and CMMG Inc. Rifle*

32.     On Phone 3, analysts observed - during their initial search for evidence related to violations of fraud and identity theft - an internet browser history and web bookmarks related to firearms such as "Full Auto GLOCK! Select Fire Suppressed 9mm & 40 S&W – YouTube," "Methods for Attaching Firearm Suppressor – YouTube," and "How to make a silencer that works in 10 minutes for under $20 – YouTube."  As discussed already, analysts examining the Target Cellular Phones were not specifically looking for firearms-related information.  Review of the internet browser history, download history, and web bookmarks for the devices provided additional evidence related to the crimes discussed in the Original Warrants such as Google Chrome download history of files with the names, "Social Security Card ssc blank color.html" and "soc security.jpg."

33.     On or about June 1, 2021, after agents located firearms inside the Target Residence, the Prince George's County Police Department was contacted to assist, as COMER has previous convictions for offenses that prohibited COMER from possessing a firearm.  PGPD Cpl. T. Brooks subsequently applied for and received a Maryland state search warrant for additional firearms and ammunition from Judge C. Philip Nichols.  PGPD Officers took the following property from the Target Residence pursuant to the state warrant:

- Black Aces Tactical FD12 12 gauge Shotgun,

- German Sports Guns GSG16 Carbine,

- CMMG Inc Rifle,[4]

- SKS 7.62x39 Rifle,

- Arisaka 7.7x58mm Rifle,

- Winchester 67 Rifle,

- Llkebokin Rifle (also referred to as Mosin-Nagant M1891 rifle),

- Mauser Gewehr 98 Rifle,

- M1 Carbine,

- Sturngewehr GS43 Rifle,

- 303 British Lee Enfield Rifle,

- Walther P38 Handgun,

- Century Arms Canik TP9 Handgun,

- Sig Sauer P229 Handgun,

- Glock 23 Handgun, and

- Approximately 6,658 rounds of assorted ammunition.

The PGPD police report for the search indicates that the firearms were recovered from two locations in the house: from a master bedroom[5] closet and from a basement room that was directly accessible from the master bedroom via a staircase.

---

[4]     On or about August 10, 2022, in interviews with DSS agents, Witness 2 stated that in or around the end of 2007, he traded a rifle, likely the CMMG Inc Rifle seized at the Target Residence pursuant to a search warrant, to GILMORE.  Witness 2 stated that he worked with GILMORE and that he traded his rifle to GILMORE for a PlayStation 3 as they are similar in value.  Records indicate that the CMMG Inc Rifle seized at the Target Residence was purchased by Witness 2 on or about June 15, 2007.

[5]     DSS agents also recorded and/or recovered numerous items from this master bedroom and attached closet in the name of GILMORE, COMER, and aliases of identity theft victims; these items include mail for Donald GILMORE, a Bank of America card in the name of GRAHAM, a

### Execution of Original Warrant on Facebook Account

34.     On or about June 9, 2021, DSS agents received records and information associated with the Facebook accounts described in Attachment A1, pursuant to the Original Warrant.  Your Affiant and computer forensic analysts from DSS conducted a review of the electronically stored information, specifically searching for all records relating to violations of the same aforementioned original statutes (including 18 U.S.C. §§ 1028A, 1343, 1344, 1542, and 371). DSS analysts determined that the user account name and email associated with Facebook account tommy.comer.144 ("Target Account") were Tommy Comer and tommytuffzx10@yahoo.com. Numerous photographs in the account information show COMER, GILMORE, and the Target Residence as well as messages from COMER on or about August 1, 2020 stating, "Movie night at my house on Saturday 8th at 8 o'clock," and on or about October 28, 2020 stating "Ok, here's my address, 14517 Rock Creek Road Brandywine, Md 20613."



*Photographs from Target Account of COMER, GILMORE; and of Target Residence attached to the above message regarding "Movie night"*

---

bank card in the name of COMER, prescription medication and medical paperwork in the name of Donald GILMORE, prescription medication in the name of Doreen FLUMMERFELT, and a driver's license, social security card, and numerous bank cards in the name of Donald GILMORE.

During the review of the Target Account, your Affiant also observed photographs of the shooting range at the rear of the Target Residence and videos of COMER firing rifles and pistols at the shooting range at the rear of the Target Residence, and outgoing messages from COMER stating, "My daughter on my personal range," and "My daughter on my range." Copies of the photos are below:



*Photograph from Target Account of the shooting range at the rear of the Target Residence.*



*Screenshots of videos from Target Account showing COMER firing a rifle (apparently CMMG Inc. Rifle) and a Handgun (apparently Glock 23) at the shooting range at the rear of the Target Residence*

### Federal Firearms Violations Pertaining to the Seized Firearms

35.    There is probable cause to believe that COMER has committed the crime of possession of a firearm by a previous convicted person in violation of 18 U.S.C. § 922(g)(1). Records for the defendant reflect multiple prior convictions. One of his convictions includes: in 2012 (arising from a 2011 charge), conspiracy to commit theft (value $10,000 or more but less than $100,000) in the Circuit Court for Charles County, Maryland, for which the defendant received a sentence of 15 years imprisonment, of which 13 years and 6 months were suspended.

That information is based on criminal history records obtained for the defendant and from the Maryland Judiciary Case Search entry for the conviction in question.[6]

36.     Each of the firearms listed above and recovered on June 1, 2021 was manufactured outside the State of Maryland and therefore would have traveled in interstate commerce prior to being recovered in Maryland.  Each of the firearms listed above and recovered on June 1, 2021 has been test-fired by the Prince George's County Police and was found to function to fire.

37.     There is probable cause to believe that GILMORE made false statements in connection with the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6).  Records indicate GILMORE purchased three of the firearms seized from the Target Residence from Big Dog Outfitters in King George, Virginia on or about November 3, 2020 – specifically, the Black Aces Tactical FD12 12 gauge Shotgun, the German Sports Guns GSG16 Carbine, and the Sig Sauer P229 Handgun.  Records indicate GILMORE provided her current address (at the time of the purchase) as 5795 Grand Pavilion Way Unit 114, Alexandria, Virginia on the ATF form 4473 to the dealer and provided a Virginia Identification card bearing the same address.  Contrary to the information provided by GILMORE in connection with the firearms purchase, messages from COMER's Facebook account prior to November 3, 2020 show him and GILMORE as residing in

---

[6]https://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseId=08K11000722&loc=64&detailLoc=ODYCRIM (September 28, 2022).

        The judiciary case search entry for the conviction reflects that the conspiracy offense was classified as a misdemeanor under Maryland law.  18 U.S.C. § 921(a)(20) excludes from the definition of "crime punishable by imprisonment for a term exceeding one year" a state offense classified as a misdemeanor, if the offense "is punishable by a term of imprisonment of two years or less."  The offense at issue here, conspiracy to commit theft (involving $10,000 to less than $100,000) had a maximum penalty of 15 years imprisonment.  *See* Md. Code. Ann., Crim. Law. § 1-202 (conspiracy offense not punishable by more than the statutory maximum for target offense); 7-104(g)(ii) (maximum penalty 15 years imprisonment for theft involving $10,000-less than $100,000 value).  Consistent with the Maryland statute, COMER actually received a 15-year prison sentence, albeit with all but 18 months suspended.

the Target Residence in Maryland. Records received from the Southern Maryland Electric Cooperative (SMECO) revealed that the utilities for the Target Residence in the name of Dianna Graham (GILMORE's mother) started on or about June 26, 2020. Fairfax General District Court records (GV17017958-00) state that a writ of eviction was issued to GILMORE for the residence at 5795 Grand Pavilion Way Unit 114, Alexandria, Virginia on or about October 19, 2017, prior to the date on which she identified 5795 Grand Pavilion as her address in connection with the firearms purchase. Thus, GILMORE's statement that she was living in Virginia at the time of the firearms purchase appears to have been false.

38.     There is probable cause to believe that COMER and GILMORE jointly possessed a stolen firearm in violation 18 U.S.C. § 922(j). Records indicate that the Glock 23 Handgun seized at the Target Residence pursuant to a search warrant was reported as stolen in Camp Springs, Maryland on or about November 27, 2005.

39.     Finally, there is probable cause to believe that evidence of the aforementioned offenses will be found on the target account information and cellular phones listed in attachments A1 and A2. As discussed above, persons engaged in firearms-related crimes often have evidence and information related to the crimes on their cellular phones and social media accounts. Moreover, in this case such evidence was already observed on the social media information and cellular devices in question.

## **CONCLUSION**

40.     Therefore, there is probable cause to support that GILMORE and COMER committed the Subject Offenses; and that additional evidence, fruits, and instrumentalities of these crimes as fully described in Attachments B1 and B2, is located in the copy of electronically stored information from Facebook accounts and electronic media devices, as more fully described

in Attachments A1 and A2, seized pursuant to the previous search warrant issued by the Honorable Thomas M. DiGirolamo, United States Magistrate Judge.   Therefore, I submit that there is probable cause for the requested search warrant.

## REQUEST FOR NIGHT-TIME AUTHORIZATION

41.      There is good cause for the Court to authorize the requested searches at any time of the day or night.  The Facebook account information and the Target Cellular Phones are already in law enforcement custody, and it is reasonable to allow law enforcement to execute the requested searches at any hour of the day, even during the evening or night, if doing so is convenient for the investigators or examiners.  Because the premises are already in law enforcement custody, there will be no prejudice to any other person from this request.

## AUTHORIZATION REQUEST

42.      Based on the foregoing, I request that the Court issue the proposed warrants, pursuant to Federal Rule of Criminal Procedure 41.

Respectfully submitted,

Nicholas Dornsife
Special Agent
United States Department of State
Diplomatic Security Service

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) on this  3   day of October 2022.

The Honorable J. Mark Coulson
United States Magistrate Judge



22